THE WYOMING.

THE DACOTAH.

BOSCHERT v. THE WYOMING.

SAME v. THE DACOTAH.

*(District Court, E. D. Missouri. June 16, 1888.)*

MARITIME LIENS—UNDER STATE LAWS—AT HOME PORT—FOR SUPPLIES—VALIDITY.

Rev. St. Mo. §§ 4225, 4226, providing that vessels shall be subject to a lien (1) for wages; (2) for debts contracted on account of stores, supplies, labor, or materials furnished; (3) for sums due for wharfage or anchorage; (4) for demands for violation of contract of affreightment or transportation, and for injuries to person or property; and that liens shall have priority in the foregoing order,—are valid, as creating a lien for labor, materials, or supplies furnished in the home port, and such lien is enforceable in admiralty, and is of equal dignity with those for like claims contracted in foreign ports.

In Admiralty. Libels and intervening petitions for labor, materials, and supplies furnished.

Rev. St. Mo. §§ 4225, 4226, provide as follows:

Sec. 4225. "Every boat or vessel * * * used in navigating the waters of this state shall be liable and subject to a lien in the following cases: *First,* for all wages due to hands or persons employed on board such boat or vessel for work done or services rendered on board the same, except for wages which may be due to the master or clerk thereof; *second,* for all debts contracted by the master, owner, agent, or consignee of such boat, vessel, or other craft on account of stores or supplies furnished for the use thereof, or on account of labor done or materials furnished by mechanics, tradesmen, or others in the building, repairing, getting out, furnishing, or equipping thereof; *third,* for all sums due for wharfage or anchorage of such boat or vessel within this state; *fourth,* for all demands or damages accruing from the non-performance or malperformance of any contract of affreightment, or of any contract touching the transportation of persons or property, entered into by the master, owner, agent, or consignee of such boat or vessel, and for damages for injuries done to persons or property by such boat or vessel."

Sec. 4226. "The classes of claims specified in the preceding section shall have priority according to the order in which they are enumerated, and said liens shall have precedence of all other liens and claims against such boat or vessel."

*Chas. S. Hayden, Samuel N. Holliday, H. D. Wood, Campbell & Ryan, Cochran, Dixon & Smith, Mills & Flitcraft, L. Wilcox,* and *Thomas M. Knapp,* for libelants and petitioners.

*Dyer, Lee & Ellis* and *Chas. G. B. Drummond,* for excepting petitioners.

THAYER, J. In these cases, exceptions have been filed to various libels and intervening petitions preferred by the holders of claims for labor, materials, and supplies furnished the steamers in their home port. The intervenors, who have filed the exceptions, are mortgagees of a part interest in the steamers; the mortgages having been given to secure the purchase money agreed to be paid for an interest sold by the intervenors in the respective steamers after some, at least, of the various claims against the steamers had accrued. As the intervenors' mortgages, on account of which they have appeared, are only good as against "remnants and surplus," if there shall be any after all admiralty liens have been discharged, their right to file exceptions, at this time, as against those who have demands based on maritime contracts, has beeen contested.

Waiving that question, however, I proceed to the main exception taken by the intervenors to the various libels, which is, in substance, that the libelants have no lien, under the maritime law, for labor, materials, or supplies furnished in the home port, and that the local law of the state, which attempts to create such lien, is, in this instance at least, void. The first branch of the proposition is not denied. As administered and interpreted in this country, it is, of course, conceded that the admiralty law gives no lien for supplies or materials furnished in the home port. *The Lottawanna,* 21 Wall. 558. The second branch of the proposition, that no lien exists, under and by virtue of the local law of the state, which an admiralty court can entertain or enforce, must be denied. This

is but a renewal of an old controversy which must be regarded as deter-
mined by *The Lottawanna Case*, 21 Wall. 579, 580, and by the construction
that has since been placed on that decision by various admiralty courts.
In the case of *The Guiding Star*, 18 Fed. Rep. 264, Mr. Justice MAT-
THEWS held that a lien given by a local statute of Ohio for materials and
supplies furnished in a home port was of equal dignity with the lien
given by the maritime law for like materials and supplies when furnished
in a foreign port, and that the lien might be enforced in an admiralty
court. Speaking of this subject, and predicating his views on what was
decided in *The Lottawanna Case*, he says:

"The claims [that is, for supplies furnished in a home and foreign port]
are in their character, both classes being maritime, alike, and of equal merit.
The lien is given by the law; and although the source of one is the maritime
law, and that of the other a local statute, nevertheless they are both so dis-
tinctively of a maritime nature that they are exclusively cognizable in the ad-
miralty courts. * * * In both cases the lien is given by the law admin-
istered in admiralty courts, and there is no circumstance * * * that takes
from the local law its equal force and effect with that of the general maritime
law. It is because the latter, by virtue of its own principles, recognizes the
efficacy of the local statutes to confer a lien, that courts of admiralty acquire
jurisdiction to enforce it at all. In doing so, they are in fact enforcing the gen-
eral maritime law; and that law, in adopting and enforcing the lien given by
the local law, incorporates it into its own system, and puts it on the same
footing as if it had been given by the maritime law originally."

This view of the subject was adopted by Judge BROWN, of the Southern
district of New York, in the cases of *The J. W. Tucker* and *The Arctic*,
20 Fed. Rep. 134, and 22 Fed. Rep. 128. To the same effect, see the
case of *The Burnside*, 3 Fed Rep. 228, and 9 Fed. Rep. 521.

There is no substantial difference between the Ohio statute which cre-
ates a lien for supplies furnished in a home port and the Missouri stat-
ute on the same subject. Any attempt, as it appears to me, to distin-
guish between the statutes of the two states, and to say that the Missouri
statute is void, and ought not to be recognized by an admiralty court,
while the Ohio statute is valid, must end in failure. It is of no import-
ance that the statute of Missouri classifies the various liens created, and
gives them a certain priority. Although, in a general way, the Missouri
statute follows the classification of the maritime law, yet, if that were
not the case, this court would not be bound to adopt the classification
prescribed by the local statute as to those claims that grow out of mari-
time contracts. With reference to all that class of demands that are
founded on maritime contracts, an admiralty court, while recognizing
the efficacy of the local statute to create a lien, will apply its own rules
in determining questions of priority. *The Guiding Star, supra*, 267, 268.
The Missouri statute creates a lien, in clear and unmistakable language,
in favor of the demands described in the several libels, and all the es-
sential steps have been taken to secure the liens. In so far, therefore,
as the exceptions filed proceed on the theory that the local statute is in-
operative to create a lien for materials, labor, or supplies furnished in
the home port that will be recognized in this court, they must be over-

ruled. Liens of that sort will be recognized as of equal dignity with liens for like claims contracted in foreign ports. As above explained, such is the tendency of the later decisions on the subject, and this court will adopt that view.